**MANDATE**

19-2664-cr (L)
*United States v. Rojas*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty-one.

PRESENT: ROBERT D. SACK,
 RICHARD C. WESLEY,
 RICHARD J. SULLIVAN,
  *Circuit Judges*.
_____

UNITED STATES OF AMERICA,

  *Appellee*,

  Nos. 19-2664-cr (Lead),
   19-3148-cr (Con),
   19-3161-cr (Con),
   19-3167-cr (Con)

 v.

FELIX ROJAS, ODILON MARTINEZ-ROJAS,

SEVERIANO MARTINEZ-ROJAS, JOVAN RENDON-REYES,

    *Defendants-Appellants*.*†

_____

| | |
|---|---|
| **FOR DEFENDANTS-APPELLANTS:** | LAWRENCE D. GERZOG, Law Offices of Lawrence D. Gerzog, New York, NY *for* Felix Rojas. |
| | INES DE CROMBRUGGHE MCGILLION, Ines McGillion Law Offices, PLLC, Putney, VT *for* Odilon Martinez-Rojas. |
| | ROBIN CHRISTINE SMITH, Law Office of Robin C. Smith, Esq. P.C., San Rafael, CA, and LEEAN OTHMAN, Fremont, CA, *for* Severiano Martinez-Rojas. |
| **FOR APPELLEE:** | MARGARET LEE (Susan Corkery, *on the brief*), Assistant United States Attorneys, *for* Mark J. Lesko, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY. |

Appeal from the United States District Court for the Eastern District of New York (Edward R. Korman, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

---

*The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

† The Appeal for Jovan Rendon-Reyes, No. 19-3167, is determined by separate order filed today.

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendants-Appellants Felix Rojas ("FR"), Odilon Martinez-Rojas ("OMR"), and Severiano Martinez-Rojas ("SMR") (identified individually by their initials and collectively as "Defendants") appeal various aspects of their sentences imposed by the district court (Korman, *J.*) after convictions following their guilty pleas for racketeering (18 U.S.C. § 1962(c)) and sex trafficking by force, fraud, or coercion (18 U.S.C. § 1591(a)(1), (b)(1)).  Defendants took part in a trafficking organization that smuggled young, poor women from Latin America – including victims identified here as Jane Does 1–9 – to the United States and forced them into prostitution for the profit of the organization's members.

Each Defendant entered into a plea agreement in which he conditionally waived his right to challenge his conviction and sentence on appeal.  Defendants pleaded guilty to individual racketeering and sex trafficking charges with respect to various Jane Does.  The district court ultimately sentenced FR to a term of 300 months' imprisonment and five years' supervised release, and OMR and SMR both to 293 months' imprisonment and five years' supervised release.  After a restitution hearing, the court also ordered FR, OMR, and SMR to pay restitution

in amounts of $367,500, $476,700, and $658,300, respectively, all of which was joint and several as to overlapping victims.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. Challenges to the Restitution Orders

Although each of the Defendants pleaded guilty pursuant to a plea agreement with an appeal waiver, none of the agreements specifically addressed whether the waiver extended to restitution. Accordingly, Defendants are free to challenge their restitution awards on appeal. *See United States v. Oladimeji*, 463 F.3d 152, 156–57 (2d Cir. 2006) (allowing appeal of restitution order because appellate waiver in plea agreement could reasonably be read "not to cover determinations of restitution"). Generally, we review restitution orders deferentially and will reverse only for abuse of discretion. *United States v. Pearson*, 570 F.3d 480, 486 (2d Cir. 2009) (finding abuse where "a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions" (internal quotation marks omitted)).

Defendants principally argue that their restitution orders should be vacated because the court lacked sufficient evidence to order such "excessive" amounts.

FR and OMR also argue that the court lacked sufficient proof to calculate *any* restitution amount for Jane Doe 7 because her affidavit, which stated that she was trafficked for "several years," contained no exact dates.

Congress has mandated restitution for victims of sex-trafficking crimes. Consequently, courts must "direct the defendant to pay the victim . . . the full amount of the victim's losses," which includes "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." 18 U.S.C. § 1593(b)(1), (b)(3).[1] The government bears "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense," and the court must resolve "[a]ny dispute as to the proper amount or type of restitution . . . by the preponderance of the evidence." *Id.* § 3664(e).

In estimating the restitution amounts for the victims here, the government relied on information provided by the victims and multiplied the average number of sex acts the victims were forced to perform each week (70) by the average price

---

[1] "[T]he term 'full amount of the victim's losses' includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim," and includes: "medical services relating to physical, psychiatric, or psychological care"; "physical and occupational therapy or rehabilitation"; "necessary transportation, temporary housing, and child care expenses"; "lost income"; "reasonable attorneys' fees, as well as other costs incurred"; and "any other relevant losses incurred by the victim." 18 U.S.C. § 2259(c)(2); *see id*. § 1593(b)(3).

5

per transaction ($15) to reach a monthly estimate of $4,200.  The government then multiplied this monthly estimate, which it described as "conservative," by the total number of months each victim worked as alleged in the superseding indictment and as the victims recounted in their statements.  After reviewing the victims' statements, Defendants' Presentence Investigation Reports (the "PSRs"), and Defendants' various plea agreements, the district court held a hearing on restitution before accepting the government's proposed amount for Jane Doe 7 – using a 14-month trafficking period well within her stated period of "several years" – and further reducing the "conservative" restitution proposals for most other victims.

Based on this record, including the sworn statements of Jane Doe 7 and other victims, we cannot say that the district court abused its discretion in ordering the restitution awards it did.  As we said in *United States v. Gushlak*, "[s]o long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution."  728 F.3d 184, 196 (2d Cir. 2013) (internal quotation marks omitted); *see id.* at 195–96 (noting that courts need not determine restitution with "mathematical[] precis[ion]"; rather, "a reasonable approximation will suffice, especially in cases in which an

exact dollar amount is inherently incalculable" (internal quotation marks omitted)). This point is especially pertinent in calculating losses associated with sex trafficking crimes, which rarely involve detailed contemporaneous records from defendants or third parties.

FR separately argues that his restitution order should be set aside because the plea agreement gave the court limitless discretion to impose restitution; that FR had no notice that restitution could be imposed jointly and severally; and that FR had no notice that restitution would be imposed for Jane Does 3, 5, and 7. But this additional challenge to his restitution order, which FR mischaracterizes as a Rule 11 argument, is unpersuasive.

First, the district court fully complied with Rule 11 when it specifically asked FR before his plea if he understood that restitution was mandatory and would be "in the full amount of each victim's losses as determined by the judge." SMR App. at 163; *see also* Fed. R. Crim. P. 11(b)(1) (explaining that before accepting a guilty plea in open court, "the court must inform the defendant of, and determine that the defendant understands . . . the court's authority to order restitution"). FR confirmed his knowledge of this fact; he also confirmed that he had read and understood his plea agreement, which stipulated that Jane Does 3, 5, and 7 were

victims under the United States Sentencing Guidelines and stated that the penalties for his charged conduct included mandatory restitution "in the full amount of each victim's losses as determined by the Court." Gov. App. at 2–5. The district court was not required to state an exact amount of mandatory restitution at the time of FR's plea, nor did it need to state whether restitution would be imposed jointly and severally. *See United States v. Nucci*, 364 F.3d 419, 422–23 (2d Cir. 2004); *cf.* Fed. R. Crim. P. 11 advisory committee's note to 1985 amendment (explaining that where a statute "contemplates that the [restitution] amount . . . will be ascertained later in the sentencing process," the "exact amount or upper limit" of restitution "cannot and need not be stated at the time of the plea").

Nor has FR shown that but for the alleged Rule 11 violation he would not have pleaded guilty.[2] This is perhaps not surprising since, as the government notes, "the benefits [FR] gained by virtue of the guilty plea and the perils he would face were the plea to be upended" make withdrawal of his plea singularly

---

[2] Because FR failed to object at the time of his plea, the alleged Rule 11 violation is subject to plain error review on appeal. *See United States v. Youngs*, 687 F.3d 56, 59 (2d Cir. 2012). "[T]o show that a Rule 11 violation was plain error, the defendant must demonstrate that there is a reasonable probability that, but for the error, he would not have entered the plea." *Id*. (internal quotation marks omitted).

unattractive. Appellee Br. at 54. For all these reasons, we reject FR's separate challenge to his restitution order.

## II. *Challenges to OMR's and SMR's Terms of Incarceration*

Although OMR and SMR both signed plea agreements that waived their rights to appeal a sentence below 327 months "without regard to the sentencing analysis used by the Court," each now challenges the district court's application of certain enhancements in their respective sentences.

### A. *Vulnerable Victim Enhancements*

SMR argues that the district court wrongly applied the enhancement for vulnerable victims pursuant to Sentencing Guidelines § 3A1.1(b)(1) with respect to Jane Does 1, 4, and 9. He concedes that he waived his right to challenge his sentence in his plea agreement but argues that the waiver is unconscionable in light of the high sentence he faced. We have consistently held that "[w]aivers of the right to appeal a sentence are presumptively enforceable." *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) (internal quotation marks omitted). There are a few exceptions to this general rule – for example, (1) when the defendant's sentence was "based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases," (2) "when the government breached the plea

agreement," or (3) "when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus." *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000) (alteration and internal quotation marks omitted). But where, as here, none of those narrow exceptions apply, "[k]nowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *United States v. Granik*, 386 F.3d 404, 412 (2d Cir. 2004) (internal quotation marks omitted). We therefore uphold SMR's appellate waiver and conclude that he cannot challenge his sentence.

### B. Serious Bodily Injury Enhancement

OMR argues that his sentence should be vacated because the district court violated Rule 32 of the Federal Rules of Criminal Procedure – depriving him of due process and effective counsel – when it failed to determine a "controverted fact" before applying an enhancement for serious bodily injury under Sentencing Guidelines § 2A3.1(b)(4)(B) (the "SBI enhancement").[3] The parties stipulated to

---

[3] Rule 32 requires courts to, "for any . . . controverted matter[,] rule on the dispute [at sentencing]

10

the SBI enhancement in OMR's plea agreement, but the probation officer declined to apply it in the PSR. The government then advocated for the SBI enhancement at OMR's sentencing hearing in January 2019 on the theory that OMR had forced Jane Doe 1 to get a large tattoo against her will to mark her as his property. After the parties discussed the tattoo and the SBI enhancement, the district court applied the enhancement and imposed sentence on OMR. The district court nevertheless directed the government to provide additional evidence to further support the finding of Jane Doe 1's "extreme pain," which is a prerequisite for a SBI enhancement. *See* OMR Second App. at 179 ("I will [apply the enhancement] under extreme physical pain on the condition that [the government] provide me, before I enter the judgment with evidence of that because I'm not prepared to take judicial notice of it . . . ."); U.S. Sentencing Guidelines Manual § 1B1.1, cmt. app. n.1(M) (U.S. Sentencing Comm'n 2018). A few weeks later, the government filed declarations from (1) a Department of Homeland Security agent detailing his conversation with Jane Doe 1 about the pain caused by her forced tattooing, and

---

or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). Having ruled on the matter, the court then "must append a copy of the court's determinations under [Rule 32] to any copy of the presentence report made available to the Bureau of Prisons." *Id.* 32(i)(3)(C).

11

(2) a dermatologist discussing the pain associated with tattoos and their removal. OMR did not object to the declarations or request an additional hearing on the issue. On September 10, 2019, the district court held a restitution hearing for OMR, at which OMR and his counsel were present. At no time during that proceeding did OMR object to the filing of the declarations or otherwise challenge the SBI enhancement. Approximately two weeks later, the court docketed the judgment for OMR in conformity with the oral sentence imposed on January 3, 2019.

OMR contends that the appellate waiver contained in his plea agreement is unenforceable because the district court violated Rule 32 of the Federal Rules of Criminal Procedure and "failed to enunciate any rationale for" the SBI enhancement, which "amounted to an abdication of judicial responsibility." *United States v. Woltmann*, 610 F.3d 37, 40, 42–43 (2d Cir. 2010) (alteration and internal quotation marks omitted) (explaining that a court's complete refusal to consider mitigating evidence or mandatory sentencing factors "denied the parties [of] their bargain and reasonable expectations" under the plea agreement and rendered the appeal waiver unenforceable).

But even if it could be argued that the district court committed "meaningful error" in failing to make an express determination about whether the forcible

tattooing of Jane Doe 1 caused "extreme pain" based on the evidence before it at OMR's sentencing, *Riggi*, 649 F.3d at 147, this error did not constitute "an abdication of judicial responsibility" sufficient to render OMR's appeal waiver unenforceable, *see Woltmann*, 610 F.3d at 43 (internal quotation marks omitted) (explaining that the court's refusal to consider certain Guidelines factors or evidence at sentencing was "an error categorically different from a misapplication of a guideline, or a mistake of law, or a dubious finding of fact"). In *United States v. Buissereth*, we upheld an appellate waiver even though the district court failed to rule on objections to the PSR, calculate a sentencing range under the Sentencing Guidelines, or consider relevant § 3553 factors at sentencing. 638 F.3d 114, 115–17 (2d Cir. 2011). There, the district court issued a written judgment post-sentencing that made necessary factual findings and identified a Guidelines range consistent with the range anticipated by the parties in the plea agreement. *Id.* at 116. We noted that the sentence imposed by the district court was "not 'fundamentally unfair'" because it "was reasonably foreseeable at the time of [the defendant's] plea and undoubtedly taken into account by [the defendant] and his counsel in entering the plea agreement." *Id.* at 118; *see also United States v. Arevalo*, 628 F.3d 93, 97–99 (2d Cir. 2010) (holding that appellate waiver barred Rule 32 challenge on

appeal where a district court's failure to make findings regarding disputed portions of the PSR at sentencing in violation of Rule 32 was not an abdication of judicial responsibility).  Thus, "[w]hile [OMR's] appeal waiver did not relieve the District Court of its responsibility to follow the procedural requirements related to the imposition of a sentence," it precludes us "from correcting the errors alleged to have occurred below."  *See Buissereth*, 638 F.3d at 117.

We note that OMR's counsel had opportunities to object to the SBI enhancement before and during OMR's sentencing proceeding but did not do so.  Further, OMR's plea agreement, which significantly "capped his sentencing exposure," *Riggi*, 649 F.3d at 148, expressly contemplated the imposition of a two-level SBI enhancement.  Since the sentence imposed by the district court fell within the sentencing range set forth in the plea agreement, we cannot say that enforcement of OMR's waiver here "impugn[s] the integrity of the judiciary or the sentencing process," *id.*; *see Buissereth*, 638 F.3d at 118. [4]  We thus conclude that OMR's appeal waiver is enforceable and that his challenge to his sentence fails.

---

[4] It bears noting that the tattoo forcibly imposed on Jane Doe 1 arguably constituted an "obvious disfigurement that is likely to be permanent," which would have justified a four-level enhancement for "permanent bodily injury."  *See* U.S.S.G. § 1B1.1 cmt. app. n. 1(K).  Were we to remand this issue to the district court, the court could reasonably decide to apply the four-level enhancement and sentence OMR to a *longer* term of imprisonment.

14

### III. *Ineffective Assistance of Counsel Claims*

OMR and SMR bring claims of ineffective assistance of counsel on direct appeal, arguing that their respective attorneys failed to object at key points in sentencing. "When faced with a claim for ineffective assistance on direct appeal," we may choose to: "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003). We have generally expressed a "baseline aversion to resolving ineffectiveness claims on direct review," *id.*, based in part on the belief that an "allegedly ineffective attorney should generally be given the opportunity to explain the conduct at issue," *United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003). Because these ineffective assistance claims would best be heard by the district court, where defense counsel would be afforded an opportunity to explain their conduct, we decline to review them now. Defendants OMR and SMR may choose to pursue their claims in a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. *See Morris*, 350 F.3d at 39.

## IV. Conclusion

We have considered Defendants' remaining arguments and conclude that they are meritless. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit